**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| CREIGHTON GSELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08 CV 1670 JH |
| | ) | |
| ESTES EXPRESS LINES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

NOW COMES Defendant, Estes Express Lines, by and through its attorneys, Jill A. Cheskes and Ruth E. Robinson of SmithAmundsen, LLC, and as and for its Memorandum in Support of Its Motion to Dismiss, states as follows:

**I.    STATEMENT OF THE CASE**

The Complaint was filed in the Circuit Court of the County of Winnebago, Illinois, on February 13, 2008. Defendant Estes Express Lines (hereafter "Estes") was served with the Summons and Complaint on February 20, 2008. On March 21, 2008, Estes timely removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1332, and 1441. Estes now moves to dismiss the Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state any claim upon which relief may be granted.

**II.    SUMMARY OF FACTS ALLEGED IN COMPLAINT**

The following summarizes the relevant facts alleged in the Complaint, and which are taken as true solely for purposes of this Motion to Dismiss.

1.    Estes is an employer as defined in 49 U.S.C. § 31306(8), employing drivers to transport vehicles in interstate commerce. (Complaint, ¶ 4). With regard to

1

drug and alcohol testing of its drivers, Estes is subject to 49 U.S.C. § 31306 and the

regulations promulgated thereunder by the Secretary of Transportation.  (Complaint, ¶ 5).

> 2.     Estes employed Plaintiff as a driver from April of 1999 to February 27,
2006.  (Complaint, ¶ 7).  On February 27, 2006, Plaintiff was selected to undergo random
drug and alcohol testing.  (Complaint, ¶ 8).  Estes' Drug and Alcohol Policy requires that
any employee who tests positive for drugs or alcohol will be subject to immediate
discharge.  (Complaint, ¶¶ 9).

> 3.     On February 27, 2006, Plaintiff submitted to two alcohol breathalyzer
tests. The results of these tests were positive for alcohol-- .017 and .012, respectively.
(Complaint, ¶¶ 11, 23-24).

> 4.     In addition to the alcohol breathalyzer test, Plaintiff also submitted a urine
sample to be tested for illegal drugs.  (Complaint, ¶ 12).  Plaintiff alleges that Estes did
not inform him of the right to request a test of the split specimen of the sample, or
otherwise provide information on how to do so.  (Complaint, ¶ 13).

> 5.     Estes discharged Plaintiff on February 27, 2006, based on the positive
alcohol breathalyzer test results of .017 and .012.  (Complaint, ¶¶ 23-24).

### III.    APPLICABLE LEGAL STANDARD

Rule 12 of the Federal Rules of Civil Procedure provides as follows:  "Every

defense to a claim for relief in any pleading must be asserted in the responsive pleading if

one is required. But a party may assert the following defenses by motion: … (6) failure to

state a claim upon which relief can be granted."  Fed. R. Civ. P. Rule 12(b)(6).

When deciding a motion to dismiss under Rule 12(b)(6), the Court assumes all

well-pleaded allegations in the complaint to be true and draws all reasonable inferences

in the plaintiff's favor.  Christensen v. County of Boone, 483 F.3d  454, 457 (7th Cir.

2007.  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a

claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, __ U.S. __, 127

S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (U.S. 2007). However, "the pleading must contain

something more [than] a statement of facts that merely creates a suspicion [of] a legally

cognizable right of action."  Bell Atlantic, 127 S. Ct. at 1964-65.  "[I]t is not enough for a

complaint to avoid foreclosing possible bases for relief; it must actually suggest that the

plaintiff has a right to relief." EEOC v. Concentra Health Servs., 496 F.3d 773, 777 (7th

Cir. 2007).

## IV.    ARGUMENT

### A.    Plaintiff fails to state a claim for relief under Illinois law.

Plaintiff's Complaint contains two purported claims for wrongful discharge in

violation of public policy.  The first claim alleges that Estes discharged Plaintiff in

violation of public policy set forth in Department of Transportation regulation 49 C.F.R.

§ 40.153(b) by failing to inform Plaintiff of his right to request a test of the split specimen

of the urine sample or make information available on how to do so.  (Complaint, ¶¶ 13,

16-17).  The second claim alleges that Estes discharged Plaintiff in violation of public

policy set forth in Department of Transportation regulation 49 C.F.R. § 40.247 because

his positive alcohol test result was lower than .02.  (Complaint, ¶¶ 23-24).

There is no independent cause of action for "wrongful discharge" in Illinois.  In

Illinois, employment is generally at-will.  Barr v. Kelso-Burnett Co., 106 Ill. 2d 520, 525,

478 N.E.2d 1354 (1985).  Illinois courts have recognized a narrow exception to the

doctrine of at-will employment in cases involving retaliatory discharge.  The tort was first

recognized by the Illinois Supreme Court in <u>Kelsay v. Motorola, Inc.</u>, 74 Ill. 2d 172, 384

N.E.2d 353 (1978).  In <u>Kelsay</u>, the plaintiff claimed he was terminated in retaliation for

asserting rights under the Workers' Compensation Act and the Illinois Supreme Court

recognized a narrow exception to the employment at-will doctrine for retaliatory

discharge.  The Illinois Supreme Court expanded the tort of retaliatory discharge in

<u>Palmateer v. International Harvester Co.</u>, 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878

(1981).  In <u>Palmateer</u>, the plaintiff alleged he was terminated in retaliation for blowing

the whistle on criminal activity of a co-worker.

 In <u>Barr v. Kelso-Burnett Co.</u>, 106 Ill.2d 520, 478 N.E.2d 1354 (1985), the Illinois

Supreme Court refused to allow an action for retaliatory discharge because the discharged

plaintiffs failed to allege a violation of a clearly mandated public policy. <u>Id</u>. at 526.  The

plaintiffs in that case alleged that they were terminated in violation of various

constitutional and statutory rights such as the First Amendment's Freedom of Speech, the

Fourteenth Amendment's Equal Protection and right not to be deprived of property, as

well as the Constitutional right to privacy.  <u>Id.</u> at 1355.  The plaintiffs argued that the

court's decision in <u>Palmateer</u> signaled an expansion of the retaliatory discharge tort. The

<u>Barr</u> court soundly rejected this proposition:

> "Contrary to plaintiffs' assertion, however, this court has not, by its *Palmateer* and
> *Kelsay* decisions, 'rejected a narrow interpretation of the retaliatory discharge tort'
> and does not 'strongly support' the expansion of the tort. The common law doctrine
> that an employer may discharge an employee-at-will for any reason or for no
> reason is still the law in Illinois, except for when the discharge violates a clearly
> mandated public policy." <u>Id</u>. at 525.

 The Court also noted that simply citing constitutional or statutory provisions is

not sufficient and that "[t]he test for determining if the complaint states a valid cause of

action is whether the public policy clearly mandated by the cited provisions is violated by

the plaintiff's discharge." Id. at 527.  To do that, the Illinois Supreme Court held that a

court should look to the public policy behind the enactment of a particular provision.  In

this case, the Court found, that the enactments of the Constitutional provisions were

meant to limit the government's intrusion into those areas but not to govern the

relationship of private individuals and certainly not the employee-employer relationship.

Id at 527-528.

The Barr-Kelso Court went on to note that the complaint was defective in that it

did not allege that the plaintiffs were terminated in retaliation for their activities.  Id. at

529.  The Court held that a retaliatory discharge cause of action requires allegations that

the plaintiff was discharged in retaliation for his activities and that the discharge violates

a clear mandate of public policy.  Id.  Thus, both of these requirements must be met.  As

will be explored more below, in the case *sub judice*, neither of these requirements has

been met.

Since the time of Palmateer, the Illinois Supreme Court has flatly rejected all

attempts to further expand the tort of retaliatory discharge as seen in the Barr-Kelso case

and beyond.  To this date, the tort of retaliatory discharge has only been allowed in two

settings: 1) when the discharge is in retaliation for asserting rights under the Worker's

Compensation Act; and 2) when an employee is discharged in retaliation for the reporting

of illegal or improper conduct; i.e. "whistleblowing."  Jacobson v. Knepper & Moga,

P.C., 185 Ill. 2d 372, 376, 706 N.E.2d 491, 493 (1998).  There have been many attempts

to further expand the tort beyond these settings, all of which have been rejected.

In order to state a valid claim for retaliatory discharge in Illinois, a plaintiff must

allege that (1) the plaintiff was discharged, (2) the discharge was in retaliation for his or

her activities, and (3) the discharge violates a clear mandate of public policy.  Graham v. Commonwealth Edison Co., 318 Ill. App. 3d 736, 742, 742 N.E.2d 858, 864 (Ill. App. Ct. 1st Dist. 2000) (citation omitted).  "In general, . . . public policy concerns what is right and just and what affects the citizens of the State collectively." Palmateer v. International Harvester Co., 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878, 52 Ill. Dec. 13, 15 (1981). Public policy will be found "in the State's constitution and statutes and, when they are silent, in its judicial decisions." Palmateer, 85 Ill. 2d at 130.

As outlined above, Illinois courts have thus far found a contravention of public policy to exist in only the following categories of cases: filing a Workers' Compensation claim, Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 181, 384 N.E.2d 353, 357, 23 Ill. Dec. 559, 563 (1978), , and "whistle-blowing" activities  Palmateer, 85 Ill. 2d at 129-30; See Russ v. Pension Consultants Co., 182 Ill. App. 3d 769; 538 N.E.2d 693, 696, 131 Ill. Dec. 318 (Ill. App. Ct. 1st Dist. 1989).   "The 'whistle-blowing' class of cases includes situations where an employee is dismissed for reporting that illegal or wrongful activities have been engaged in by a fellow employee or employer, [citation omitted], as well as where the employee himself refuses to perform an illegal or wrongful act [citation omitted]." Russ, 182 Ill. App. 3d at 775.

In the instant case, Plaintiff has failed to state a valid cause of action.  In the first instance, in order to state a claim for retaliatory discharge, the Plaintiff has to allege that he was terminated "in retaliation" for his activities.  Barr-Kelso, 106 Ill.2d at 529. Plaintiff has not alleged this necessary element and, as such, has failed to state a claim.

Assuming somehow that Plaintiff can maintain a claim without alleging any retaliation, Plaintiff's Complaint also fails to allege any type of conduct on the part of

Estes that would fall within any of the foregoing categories of public policy. That is, the Complaint makes no allegation that Plaintiff's discharge had anything to do with a workers compensation claim or reporting illegal activities or refusal to perform an illegal act. Again, the gravamen of Plaintiff's Complaint is that Estes allegedly violated Department of Transportation regulations regarding the drug and alcohol testing which resulted in Plaintiff's discharge. Because the Illinois courts have not recognized such allegedly wrongful conduct as a violation of public policy, Plaintiff's Complaint fails to state a claim for retaliatory discharge under Illinois law.

**B.      Plaintiff's discharge does not offend public policy.**

Even assuming, arguendo, that the Department of Transportation regulations cited by Plaintiff provide a source of public policy which would support a claim for wrongful discharge under Illinois law, the facts alleged in the Complaint do not demonstrate that such public policy was violated in any event. As noted, the Complaint asserts that Plaintiff was discharged by Estes for testing positive for alcohol, and the breathalyzer test results were .017 and .012. (Complaint, ¶¶ 23-24). Plaintiff contends that the discharge violates Department of Transportation regulation 49 C.F.R. § 40.247 because his positive alcohol test results were lower than .02. (Complaint, ¶¶ 23-24). However, nothing in the cited regulation requires that an employer retain an employee whose positive alcohol test result is lower than .02, or that an employer is prohibited from discharging such employee under that circumstance. Rather, the regulation simply sets forth a procedure that the "screening test technician" (SST) or the "breath alcohol technician" (BAT) is to follow if the alcohol concentration is either less or more than .02. See 49 C.F.R. § 40.247(a)-(b). On the other hand, and as Plaintiff acknowledges, Estes has a drug and

7

alcohol policy which requires that any employee who tests positive for drugs or alcohol will be subject to immediate discharge. (Complaint, ¶¶ 9). Nothing in that policy requires that an employee must have an alcohol concentration of .02 or more in order to be subject to discharge. Therefore, Estes decision to discharge Plaintiff for testing positive for alcohol violated neither the cited Department of Transportation regulation nor Company policy.

Plaintiff also contends that Estes violated public policy set forth in Department of Transportation regulation 49 C.F.R. § 40.153(b) by failing to inform Plaintiff of his right to request a test of the split specimen of the urine sample or make information available on how to do so. (Complaint, ¶¶ 13, 16-17). Significantly, and by its terms, this regulation applies to <u>drug</u> tests. Even assuming that Estes did not comply with the procedural aspects of this regulation as alleged, such non-compliance is irrelevant because Plaintiff was discharged for a positive <u>alcohol</u> test result. Therefore, any alleged public policy contained within this regulation could not have been violated as a result of Plaintiff's discharge.

**C.    Plaintiff has no private right of action under Federal law.**

As noted, Plaintiff claims that Estes discharged him in violation of the public policy contained in the above-cited Department of Transportation regulations. (Complaint, 13, 16-17). These regulations are promulgated by the Secretary of Transportation under authority of the Federal Omnibus Transportation Employee Testing Act of 1991 (FOTETA), 49 U.S.C. § 31306(b)(1)(A). To the extent Plaintiff's Complaint purports to assert a cause of action under this Federal law and regulation, courts have found that no such private right of action exists. <u>See Parry v. Mohawk Motors of</u>

Michigan, Inc., 236 F.3d 299, 309 (6th Cir. 2000).  Instructively, the Sixth Circuit stated

as follows:

> This Court similarly concludes that the FOTETA is framed as a general mandate
> to the Department of Transportation as the regulations promulgated under part 40
> are applicable to the Federal Highway Administration, Federal Railroad
> Administration, Federal Transit Administration and Federal Aviation
> Administration. See 49 C.F.R. § 40.25 (f)(10)(B). This regulatory scheme does
> not evince a concern for the protection of drivers who believe that they have been
> aggrieved through the drug testing process. [citations omitted]**.**  Furthermore,
> federal regulations in and of themselves cannot create a private cause of action
> unless the action is at least implied from the applicable statute. [citation omitted].
> Therefore, this Court holds that the district court properly concluded that the
> FOTETA or the regulations promulgated thereunder do not imply a private cause
> of action and properly granted summary judgment on Plaintiff's claim.

Parry, 236 F.3d at 309.  Similarly, this Court has held that no private right of action is

either expressed or implied by the FOTETA.  McDowell v. J.B. Hunt Transport, Inc.,

2004 U.S. Dist. LEXIS 19363 (N.D. Ill. Sept. 28, 2004)("while drivers may indirectly

benefit from uniform procedures, and the statute and regulations include protections for

employees affected by drug testing requirements, (see 49 U.S.C. § 31306(c); 49 C.F.R. §

382.605), this does not mean commercial drivers are a class of persons for whose benefit

FOTETA was enacted.").[1]  Id. at *10-11.

Thus, and assuming Plaintiff's Complaint purports to assert a separate cause of

action against Estes for violation of the FOTETA and related Department of

Transportation regulations, such claim must be dismissed pursuant to Rule 12(b)(6).  See

McDowell, 2004 U.S. Dist. LEXIS 19363 at * 12.

---

[1] A copy of this decision is attached hereto as Exhibit "A."

## V.    CONCLUSION

Based upon all of the foregoing, Estes contends that Plaintiff's Complaint fails to

state any claim for which relief may be granted.  Therefore, Estes requests that the Court

grant this Motion and dismiss the Complaint in its entirety pursuant to Rule 12(b)(6).

This the 25th day of March , 2008.

/s/Jill A. Cheskes_____
/s/ Ruth E. Robinson_____
Jill A. Cheskes (ARDC # 06237878)
Ruth E. Robinson (ARDC # 6207546)
SmithAmundsenc, LLC
150 N. Michigan Avenue, Suite 3300
Chicago, IL  60601
T (312) 894-3200
F (312) 894-3210

# EXHIBIT
# A

LEXSEE 2004 U.S. DIST. LEXIS 19363

**KENNETH McDOWELL, Plaintiff, v. J.B. HUNT TRANSPORT, INC. Defendant.**

**03 C 6590**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2004 U.S. Dist. LEXIS 19363*; *21 I.E.R. Cas. (BNA) 1643*

**September 28, 2004, Decided**

**PRIOR HISTORY:** *McDowell v. J.B. Hunt Transp., Inc., 2004 U.S. Dist. LEXIS 15728 (N.D. Ill., Aug. 5, 2004)*

**DISPOSITION:** Defendant's motion to dismiss Counts II, IV, V, and VI pf the Complaint granted in part and denied in part.

**COUNSEL:** **[*1]** For KENNETH MCDOWELL, plaintiff: Kenneth McDowell, [PRO SE], Chicago Heights, IL.

For J.B. HUNT TRANSPORT, INC., defendant: Dana Shelton Connell, Tanya Lenko Castrogiovanni. Littler Mendelson, P.C., Chicago, IL.

**JUDGES:** HON. RONALD A. GUZMAN, United States Judge.

**OPINION BY:** RONALD A. GUZMAN

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kenneth McDowell brings this action against Defendant J.B. Hunt Transport, Inc. alleging discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.* (Count I); violations of the Federal Motor Carrier Safety Regulations, 49 C.F.R. Part 40 and 49 C.F.R. §§ 382, 391 (Count II); discrimination in violation of *42 U.S.C. §§ 1981* and *1988* (Count III); intentional infliction of emotional distress (Count IV); intentional interference with actual and prospective economic relationships (Count V); negligent supervision and retention (Count VI); and defamation (Count VII).

Defendant moves to dismiss Counts II, IV, V, and VI of the Second Amended Complaint ("Complaint") for failure to state a claim upon which relief may be granted pursuant to *Federal Rules of Civil Procedure ("Rule") 12(b)(6)* **[*2]** and Counts IV and VI for a lack of subject matter jurisdiction pursuant to *Rule 12(b)(1)*. For the reasons set forth below, Defendant's motion to dismiss Counts II, IV, V, and VI is granted in part and denied in part.

**BACKGROUND**

The following facts of the Complaint are assumed to be true for purposes of this motion to dismiss. *Albany Bank & Tr. v. Exxon Mobil Corp., 310 F.3d 969, 971 (7th Cir. 2002).* Plaintiff is an African-American who was employed by Defendant from June 2001 through November 19, 2001. (Second Am. Compl. PP 9, 15, 17.) While employed, Plaintiff alleges he was forced to drive an unsafe vehicle, but newly hired Caucasian employees were given newer, safer vehicles to drive. (*Id.* P 32.) Plaintiff's complaints about his vehicle were "mostly ignored" (*Id.* P 10.) Plaintiff eventually was terminated for violating Defendant's Controlled Substance Abuse Policy for taking medication prescribed to his wife. (*Id.* PP 14, 17.)

Plaintiff alleges his termination and Defendant's treatment of African-American drivers as it relates to both vehicle assignment and the application of its substance abuse policy was discriminatory based on race. ( **[*3]** *Id.* P 19.). Plaintiff alleges that he never refused to take a drug test and should not have been terminated by Defendant without a reasonable suspicion drug test required by *49 C.F.R. § 382.307(b) (2004)*. (Second Am. Compl.P 40.) Plaintiff further alleges that after his termination, Defendant published false information about his alleged drug use to others in the business of Defendant (*Id.* P 22.) Plaintiff claims that as a result of Defendant's

2004 U.S. Dist. LEXIS 19363, *; 21 I.E.R. Cas. (BNA) 1643

actions, he has been unable to secure regular employment as a truck driver. (*Id.* P 23.)

Plaintiff alleges that he has suffered lost wages, continuing injury to his career and employment, humiliation, mental anguish, invasion of privacy, damage to reputation, pain, and suffering. (*Id.* at 13, P C.)

## DISCUSSION

A motion to dismiss pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* tests the sufficiency, not the merits, of the complaint *Autry v. N.W. Premium Servs., Inc., 144 F.3d 1037, 1039 (7th Cir. 1998).* When reviewing a motion to dismiss, the Court accepts all well-pleaded facts as true and views any reasonable inferences from them **[\*4]** in the light most favorable to the plaintiff. *Albany Bank, 310 F.3d at 971.* Dismissal is proper when it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* Federal courts require notice, not fact, pleading, in which the complaint must include a "short and plain statement of the claim." *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993).* However, while "the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts upon which he bases his claim,'. . . he must "set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery." *Menard, Inc. v. United States Equities Dev., Inc., 2002 U.S. Dist. LEXIS 17210, 2002 WL 31050160, at \*1 (N.D. Ill. Sept 13, 2002)* (quoting *Benson v. Cady, 761 F.2d 335, 338 (7th Cir. 1985)).* If the complaint fails to allege an element required to obtain relief, dismissal may be proper. *R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co., 895 F.2d 279, 281 (7th Cir. 1989).* **[\*5]**

*Rule 12(b)(1)* provides for dismissal of claims over which the federal court lacks subject matter jurisdiction. *See Shelton v. Ernst & Young, LLP, 143 F. Supp. 2d 982, 986 (N.D. Ill. 2001).* When reviewing a *Rule 12(b)(1)* motion to dismiss, the Court must accept all well-pleaded facts as true and draw reasonable inferences from those allegations in the plaintiff's favor. *See United Transp. Union v. Gateway Western Ry. Co., 78 F.3d 1208, 1210 (7thCir. 1996).* The Court also may look beyond the complaint and view whatever evidence has been submitted by the parties to determine whether subject matter jurisdiction exists. *Id.* (citing *Bowyer v. U.S. Dep't of Air Force, 875 F.2d 632, 635 (7th Cir. 1989)).* The plaintiff bears the burden of proving that the jurisdictional requirements have been met. *See NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 237 (7th Cir. 1995).*

## COUNT II

In Count II, Plaintiff asserts a claim for violations of the Federal Motor Carrier Safety Regulations ("FMCSRs"), 49 C.F.R. Part 350 *et seq.* (Second Am. Compl. P 34.) Specifically, Plaintiff alleges that his termination **[\*6]** based on a violation of the company's Alcohol and Controlled Substances Abuse Policy without the administration of a drug test violated the "reasonable suspicion" drug test "required" by *49 C.F.R. § 382.307(b).* (*Id.* PP 37, 40.) Plaintiff also asserts that Defendant's suspicion of Plaintiff's drug use was not reasonable under *49 C.F.R. § 382.307(b).* (*Id.* P 38.)

Defendant argues that Plaintiff's claim is barred as a matter of law because no private right of action exists to enforce such Department of Transportation regulations. Plaintiff responds that although the FMSCRs do not explicitly create a private right of action, Congress's silence on the issue does not indicate that it is not available. Furthermore, Plaintiff argues, because truck drivers' rights are protected under the regulations, the FMCSRs reveal an intention to benefit drivers.

"The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction. *Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15-16, 62 L. Ed. 2d 146, 100 S. Ct. 242 (1979)*; *see Parry v. Mohawk Motors of Mich, Inc., 236 F.3d 299, 309 (6th Cir. 2000),* **[\*7]** *cert. denied, 533 U.S. 951, 150 L. Ed. 2d 752, 121 S. Ct. 2594 (2001)* ("Federal regulations in and of themselves cannot create a private cause of action unless the action is at least implied from the applicable statute."). The relevant statute in this case is the Federal Omnibus Transportation Employee Testing Act of 1991 ("FOTETA"), *49 U.S.C. § 31306 (2004),* pursuant to which the FMCSRs were promulgated. FOTETA amended the Federal Commercial Motor Vehicle Safety Act and other federal statutes to require drug testing of certain transportation workers in safety-sensitive positions. *See Drake v. Delta Airlines, Inc., 923 F. Supp. 387, 390-93 (E.D.N.Y. 1996), vacated in part on other grounds, 147 F.3d 169 (2d Cir. 1998).* FOTETA provides, in part:

> In the interest of commercial vehicle safety, the Secretary of Transportation shall prescribe regulations that establish a program requiring motor carriers to conduct preemployment, reasonable suspicion, random and post-accident testing of operators of commercial motor vehicles for the use of a controlled substance in violation of law or a United States Government regulation and **[\*8]** to conduct reasonable suspicion, random and post-accident testing of such operators for the

2004 U.S. Dist. LEXIS 19363, *; 21 I.E.R. Cas. (BNA) 1643

use of alcohol in violation of law or a United States Government regulation. The regulations shall permit such motor carriers to conduct preemployment testing of such employees for the use of alcohol.

*49 U.S.C. § 31306(b)(1)(A).*

FOTETA is framed as a general mandate statute, expressly authorizing the Secretary of Transportation to prescribe regulations relating to the establishment of drug testing programs for commercial vehicle transportation. *See 49 U.S.C, § 31306(b)(1)(B)*; *Parry, 236 F.3d at 308*. Pursuant to the statute, the Secretary promulgated regulations including the FMCSRs for the "purpose of . . . establishing programs designed to help prevent accidents and injuries resulting from the misuse of alcohol or use of controlled substances by drivers of commercial motor vehicles." *49 C.F.R. § 382.101*. The Secretary also has promulgated the Department of Health and Human Services Procedures for Transportation Workplace Drug and Alcohol Testing Programs regulations. *See* 49 C.F.R. **[*9]** Part 40.

It is undisputed that *FOTETA* does not provide an express right of action, so the question is whether a private right of action is implied in the statute. *See Statland v. Am. Airlines, Inc., 998 F.2d 539, 540 (7th Cir. 1993)*. The Court concludes that no private right of action is implied.

In *Cort v. Ash, 422 U.S. 66, 45 L. Ed. 2d 26, 95 S. Ct. 2080 (1975)*, the Supreme Court described a four-part test to determine whether an implied right of action exists in a federal statute: (1) whether the plaintiff is among the class of persons intended to benefit from the enactment of the statute; (2) whether there is any evidence of legislative intent to provide or deny a private remedy; (3) whether a private remedy would be consistent with the underlying purposes of the legislative scheme; and (4) whether the action is one traditionally delegated to state law so it would be inappropriate to imply a federal remedy. *422 U.S. at 78*. The Supreme Court has since refined this inquiry, and the central question is whether Congress intended to create a private cause of action. *See Transamerica, 444 U.S. at 15-16*; *see also Statland, 998 F.2d at 540* **[*10]** ("Of late courts seldom imply a private right of action where none appears in the statute, for a strong presumption exists against their creation.") (alteration and quotation omitted).

Plaintiff argues first that commercial drivers should have a private right to enforce FOTETA against employers because administrative procedures cannot address wrongs committed against employees and second that the FMCSRs reveal an intention to protect and benefit drivers. Plaintiff's arguments are unavailing.

First, the FMCSRs include enforcement provisions, including civil and/or criminal penalties for an employer's non-compliance, *see 49 C.F.R. § 382.507*, so a private right of action is not necessary to further FOTETA's purposes. *See Transamerica, 444 U.S. at 19* ("It is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it").

Second, while drivers may indirectly benefit from uniform procedures, and the statute and regulations include protections for employees affected by drug testing requirements, (*see 49 U.S.C. § 31306(c)* **[*11]**   ; *49 C.F.R. § 382.605*), this does not mean commercial drivers are a class of persons for whose benefit FOTETA was enacted. *See Parry, 236 F.3d at 309* (holding that FOTETA's "regulatory scheme does not evince a concern for the protection of drivers who believe they have been aggrieved through the drug testing process"); *see also Transamerica, 444 U.S. at 24* ("The mere fact that the statute was designed to protect [certain persons] does not require the implication of a private cause of action for damages on their behalf."); *First Pac. Bancorp, Inc. v. Helfer, 224 F.3d 1117,1122 (9th Cir. 2000)* (contrasting statutes that expressly name intended beneficiaries from "laws enacted for the protection of the general public") (citation and quotation omitted); *Statland, 998 F.2d at 540* ("[A] private cause of action is seldom implied for statutes framed as general commands to a federal agency or for statutes that do not create rights for a specific class of persons.").

Prior cases analyzing FOTETA and regulations promulgated thereunder have uniformly found that the statute does not expressly or **[*12]**   impliedly create a private right of action. *See Drake, 923 F. Supp. at 392* ("It is clear that Congress in enacting [FOTETA] intended to provide a general benefit to the public by increasing the level of passenger safety, and did not intend to establish a private right of action for the transportation industry's employees."); *see also Parry, 236 F.3d at 309*; *Abate v. S. Pac. Transp. Co., 928 F.2d 167,169-70 (5th Cir. 1991)*; *Howell v. Lab One, Inc., 243 F. Supp. 2d 987, 990 (D. Neb. 2003)*; *Byrne v. Mass. Bay Transp. Auth., 196 F. Supp. 2d 77, 86-87 (D. Mass. 2002)*; *Salomon v. Roche Compuchem Lab., 909 F. Supp. 126, 128(E.D.N.Y. 1995)*; *Mayo v. USF Holland, Inc., 2003 U.S. Dist. LEXIS 2389, 2003 WL 21788853, at *8 (W.D. Mich. Feb. 12, 2003)*.

Because FOTETA neither expressly nor impliedly creates a private right of action, Count II fails to allege a claim upon which relief can be granted. Accordingly, the

2004 U.S. Dist. LEXIS 19363, *; 21 I.E.R. Cas. (BNA) 1643

Court grants Defendant's motion to dismiss Count II of the Second Amended Complaint with prejudice.

### COUNT IV

In Count IV, Plaintiff alleges a state law claim **[*13]** of intentional infliction of emotional distress ("IIED"). Defendant argues this claim is preempted by the Illinois Human Rights Act ("IHRA"), *775 ILL. COMP. STAT. § 5/1-101 et seq.* (2004), and the Illinois Workers Compensation Act ("IWCA"), *820 ILL. COMP. STAT. § 305/1 et seq.* (2004), and therefore should be dismissed pursuant to *Rule 12(b)(1)*. In the alternative, Defendant asserts that the allegations in the Complaint do not constitute IIED as a matter of law.

### A. The Illinois Human Rights Act

The IHRA provides that "except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." [1] *775 ILL. COMP. STAT, § 5/8-111(C)*. Therefore, the IHRA preempts any state or common law claims that are "inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself." *Maksimovic v. Tsogalis, 177 Ill. 2d 511, 687 N.E.2d 21, 23, 227 Ill. Dec. 98 (Ill. 1997)*; *see Beard v. City of Chi., 299 F. Supp. 2d 872, 874 (N.D. Ill. 2004)*; **[*14]** *see also Jones v. SABIS Educ. Sys., Inc., 1999 U.S. Dist. LEXIS 19449, 1999 WL 1206955, at *9 (N.D. Ill. Dec. 13, 1999)* (explaining that "Illinois state courts and federal courts exercising supplemental jurisdiction over Illinois state claims lack subject matter jurisdiction over" claims preempted by the IHRA).

> 1 The IHRA provides: "It is a civil rights violation . . . for any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." *775 ILL. COMP. STAT. § 5/2-102*.

Defendant argues that because Plaintiff's IIED claim incorporates by reference the earlier allegations in the Complaint, *ie.*, allegations relating to discrimination, and does not state any other specific factual basis for the IIED claim, it is "inextricably linked" to the discrimination **[*15]** claim. The Court agrees that to the extent the IIED claim is based upon alleged discrimination, it is preempted by the IHRA. Indeed, Plaintiff does not argue to the contrary. Plaintiff responds instead that the IIED claim "arises from actions taken by the Defendant outside of the course of employment," namely providing false information to Plaintiff's subsequent actual and/or potential employers. (Pl.'s Resp. Def.'s Mot Dismiss ["Pl.'s Resp."] at 6-7.) Although these allegations are not expressly included in Count VI, "a plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment." *Early v. Bankers Life & Cas. Co., 959 F.2d 75,79 (7th Cir. 1992)*. And although Plaintiff is under no obligation to plead those facts, *see id.*, the Court notes that the substance of the defamation allegations are included elsewhere in the Complaint.

Therefore, the Court finds that Plaintiff's allegations of IIED for acts occurring after his **[*16]** employment was terminated state a claim that is not inextricably linked to the alleged civil rights violation, and those allegations are not preempted by the IHRA.

### B. The Illinois Workers Compensation Act

The IWCA contains an exclusivity provision which provides: "No common law or statutory right to recover damages from the employer . . . for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act. . . ." *820 ILL. COMP. STAT. § 305/5(a)*; *see Hunt-Golliday v. Metro. Water Reclamation Dist., 104 F.3d 1004,1016 (7th Cir. 1997)* (holding that the IWCA provides the exclusive remedy for accidental injuries that occur in the course of employment); *Socorro v. IMI Data Search, Inc., 2003 U.S. Dist. LEXIS 7400, 2003 WL 1964269, at *5 (N.D. Ill. Apr. 28, 2003)* (citing *Collier v. Wagner Castings Co., 81 Ill. 2d 229, 408 N.E.2d 198, 201-02, 41 Ill. Dec. 776 (Ill. 1980)*) (explaining that the IWCA bars IIED claims arising out of and in the course of employment). Therefore, to the extent the Complaint may attempt **[*17]** to state a claim for injuries sustained during his employment, it is preempted by the IWCA.

However, as with his response to Defendant's IHRA preemption argument, Plaintiff argues that the IWCA does not preempt his claim for IIED based on false information given to an actual and/or prospective employer after his termination. (Pl.'s Resp. at 7-8.) In order for a claim not to be preempted, an employee must prove that the injury (1) was not accidental; (2) did not arise from the plaintiff's employment; (3) was not received during the course of employment; or (4) was not compensable under the Act. *Hunt-Golliday, 104 F.3d at 1016*. Taking Plaintiff's allegations as true, Defendant's communication with the third party occurred after Plaintiff was terminated. Therefore, any injury caused by the communication did not arise from Plaintiff's employment and was

2004 U.S. Dist. LEXIS 19363, *; 21 I.E.R. Cas. (BNA) 1643

received outside the scope of employment Therefore, the IWCA does not preempt Plaintiff's claims of IIED Injuries resulting from actions that took place after Plaintiff's employment ended.

### C. IIED as a Matter of Law

Having determined that Plaintiff's IIED claim for injuries allegedly sustained after his termination is not **[\*18]** preempted, the Court turns to the question of whether these allegations state a claim upon which relief can be granted.

To state a cause of action for IIED, a plaintiff must plead: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew there was at least a high probability that his conduct would inflict severe emotional distress; and (3) the defendant's conduct caused severe emotional distress. *See Honaker v. Smith, 256 F.3d 477, 490 (7th Cir. 2001)*, Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case. *See McGrath v. Fahey, 126 Ill. 2d 78, 533 N.E.2d 806, 811, 127 Ill. Dec. 724 (Ill. 1988)*.

Defendant argues that the conduct Plaintiff complains of does not qualify as "extreme and outrageous" as a matter of law. " Liability [for IIED] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" *Pub. Fin. Corp. v. Davis, 66 Ill. 2d 85, 360 N.E.2d 765, 767, 4 Ill. Dec. 652 (Ill. 1976)* (quoting *RESTATEMENT (SECOND) OF TORTS § 46 , cmt. d* **[\*19]** (1965)). Liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or trivialities." *Id.*

Plaintiff has expressly argued that the sole basis for bis IIED claim is Defendant's alleged defamatory statement to a subsequent employer "communicating suspicion of drug use without positive proof." (Pl.'s Resp. at 9.) Allegations of defamation, however, do not rise to the level of extreme and outrageous conduct. *See Cook v. Winfrey, 141 F.3d 322, 331-32 (7th Cir. 1998)* (affirming dismissal of IIED claim, explaining that "[a] number of Illinois courts have dismissed claims of [IIED] based upon defamation, on the ground that the conduct was not extreme and outrageous'"). The facts of this case are remarkably similar to *Socorro v. IMI Data Search, Inc.*, 2003 U.S. Dist. LEXIS 7400, 2003 WL 1964269, in which the defendant company fired the plaintiff based on false information about his criminal history and then repeated the false information to others, making the plaintiff unable to secure new employment. *2003 U.S. Dist. LEXIS 7400 at \*1*. The district court dismissed the IIED claim, noting that although the allegations were

"deplorable if proven," they **[\*20]** were not sufficient to sustain an IIED claim. *2003 U.S. Dist. LEXIS 7400 at \*5* ("[Plaintiff's] naked statement that the conduct was outrageous' does not make it so."). Plaintiff's attempts to distinguish *Socorro* are not persuasive. Therefore, Count VI must be dismissed with prejudice.

### COUNT V

In Count V, Plaintiff alleges intentional interference with actual and prospective economic relationships ("IIAPER") related to his contract with both Defendant and a subsequent employer.

To state a claim for interference with an existing contractual right under Illinois law, a plaintiff must allege: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of that contract; (4) a subsequent breach by the other caused by the defendant's wrongful conduct; and (5) damages. *See Accurso v. United Airlines, Inc., 109 F. Supp. 2d 953, 962 (N.D. Ill. 2000)*.

Where the plaintiff's economic expectancy has yet to solidify into a contractual relationship, the plaintiff must allege: (1) a reasonable expectation of entering **[\*21]** into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) an intentional and unjustified interference by the defendant that caused a breach or termination of the expectancy; and (4) damages to the plaintiff resulting from such interference. *See Walker v. Braes Feed Ingredients, Inc., 2003 U.S. Dist. LEXIS 6873, 2003 WL 1956162, at \*6 (N.D. Ill. Apr. 23, 2003)*.

Defendant is correct that Plaintiff cannot state a claim for IIAPER as it relates to Plaintiff's contract with Defendant A claim of intentional interference generally can only be brought against a third party, not an employer. *See Drury v. Sanofi-Synthelabo, Inc., 292 F. Supp. 2d 1068,1071 (N.D. Ill. 2003)*; *see also Cromeens, Holloman, Sibert, Inc., v. AB Volvo, 349 F.3d 376, 397 (7th Cir. 2003)* ("A party may not be charged with tortious interference with respect to its own contract").

The remaining issue, therefore, is whether Plaintiff states a claim for IIAPER regarding actual or prospective contracts with subsequent employers. Defendant first argues that Plaintiff has essentially pleaded himself out of a claim for interference with actual contractual relationships **[\*22]** because the Complaint alleges that "Plaintiff has been unable to secure regular employment as a truck driver." (2d Am. Compl. P 23.) However, the allegation that Plaintiff could not secure "regular" employment does not foreclose the possibility that he had in fact secured some employment Moreover, the Complaint

Case 1:08-cv-01670    Document 8-2    Filed 03/25/2008    Page 7 of 7

Page 7

2004 U.S. Dist. LEXIS 19363, *; 21 I.E.R. Cas. (BNA) 1643

also alleges that Plaintiff may have had "actual contractual relationships" with others, (*id.* P 59), and "ambiguities in complaints in federal court should be interpreted in favor of plaintiffs, not defendants," *Early, 959 F.2d at 79.*

Reading the allegations of the Complaint in the light most favorable to Plaintiff, he alleges that he had a valid employment contract with a third party; that Defendant was aware of this relationship and purposely and intentionally intended to harm Plaintiff by informing the third party employer of Plaintiff's termination for alleged drug use; that absent Defendant's conduct, Plaintiff would not have been terminated from his employment; and that because of this conduct, he has been unable to obtain regular employment as a truck driver, resulting in damages.

In the alternative, Plaintiff also alleges the elements required **[*23]** for stating a claim for intentional interference with prospective economic relationships. Although the hope of obtaining employment or even being a job candidate does not constitute a "reasonable expectancy," *see Walker, 2003 U.S. Dist. LEXIS 6873, 2003 WL 1956162, at *6*, Plaintiff argues in his response that he had been hired by another company, which created a reasonable expectancy of continuing an economic relationship. Plaintiff alleges he had completed orientation and training for the company, and he was reporting for his first day of assignments when he was terminated. Furthermore, because Defendant allegedly initiated communications with this third party, Defendant was aware of this expectancy. Finally, Plaintiff contends that Defendant's intentional and false communications with the third party caused the company to terminate its business relationship with Plaintiff, and as a result, Plaintiff has been damaged. Therefore, Defendant's motion to dismiss Count V is denied.

## COUNT VI

In Count VI, Plaintiff attempts to state a negligent retention and supervision claim. Defendant asserts this claim is preempted by the IHRA and IWCA and should be dismissed pursuant to *Rule 12(b)(1)* **[*24]** on the grounds that Illinois state courts have exclusive jurisdiction. *See, e.g., Luttrell v. O'Connor Chevrolet, Inc., 2001 U.S. Dist. LEXIS 14651, 2001 WL 1105125, at *3 (N.D. Ill. Sept 19, 2001)* (citing *Maksimovic, 687 N.E.2d at 24*) (holding that negligent training, supervision, and training claims that are inextricably linked to claims under the IHRA are preempted). The parties' arguments mirror those in relation to preemption of the IIED claim, discussed above, and the same conclusion applies. To the extent the Complaint may allege negligent supervision for acts occurring during Plaintiff's employment, those claims are preempted and therefore must be dismissed pursuant to *Rule 12(b)(1)*. However, the negligent retention and supervision claim based on post-employment occurrences is not preempted and survives dismissal. Defendant chose not to move to dismiss this Count on other grounds, and thus, the Court need not analyze whether Plaintiff's allegations in Count VI state a claim upon which relief may be granted.

## CONCLUSION

For the reasons provided herein, the Court grants in part and denies in part Defendant's motion to dismiss [doc. no. 29-1]. Count **[*25]** II and IV are dismissed with prejudice. Counts V and VI are dismissed with prejudice to the extent they allege injuries caused during the scope of employment. Counts V and VI survive to the extent they allege injuries that occurred after Plaintiff's employment was terminated.

## SO ORDERED.

September 28, 2004

**ENTERED:**

## HON. RONALD A. GUZMAN

**United States Judge**