**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

CREIGHTON GSELL,                    )
                                    )
              Plaintiff,            )
                                    )
v.                                  )          Civil Action No. 08 CV 1670 JH
                                    )
ESTES EXPRESS LINES,                )
                                    )
              Defendant.            )

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

NOW COMES Defendant, Estes Express Lines ("Estes"), by and through its attorneys, Jill A. Cheskes and Ruth E. Robinson of SmithAmundsen, LLC, and David Terry of Poyner Spruill LLP, and as and for its reply in support of its Motion to Dismiss this action with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Estes states as follows:

### INTRODUCTION

In his response brief, Plaintiff has admitted that he is not attempting to assert a cause of action for common law retaliatory discharge but instead argues that Illinois recognizes a cause of action for wrongful discharge in violation of public policy. There is no such cause of action recognized in Illinois. Further, the federal regulations cited in Plaintiff's complaint do not provide a private cause of action for Plaintiff. Accordingly, the Plaintiff's complaint must be dismissed with prejudice.

### ARGUMENT

**A.    There Is No Cause of Action for Wrongful Discharge In Violation of Public Policy**

Plaintiff admits in his response brief that his case does not meet the requirements for the tort of retaliatory discharge. (Pl. Resp. p. 3) He further admits that he is not making a claim that

he was discharged in retaliation.  (Id.)  Unfortunately for Plaintiff, this dooms his case as retaliatory discharge is the <u>only</u> recognized common law exception to the employment at-will doctrine in the State of Illinois.

Plaintiff attempts to argue in his response brief that Illinois recognizes a tort "where termination from employment violates a public policy."  (Pl. Resp. p. 3)  This is simply an incorrect statement.  Plaintiff cites the <u>Kelsay</u> case for this proposition.  <u>Kelsay</u> is the Illinois Supreme Court case that first recognized the tort of retaliatory discharge.  The context of the <u>Kelsay</u> case was that the plaintiff alleged he was terminated <u>in retaliation</u> for asserting his rights under the Worker's Compensation Act.  74 Ill.2d 172, 178, 384 N.E.2d 353 (1978).

Plaintiff next cites <u>Palmateer v. International Harverster Co</u>., 85 Ill.2d 124, 421 N.E.2d 876 (1981).  In this case, the Illinois Supreme Court expanded the tort of retaliatory discharge to include a claim by an employee that he was terminated <u>in retaliation</u> for "whistleblowing."  To this day, and despite many attempts to further expand the tort of retaliatory discharge, the only two situations in which the tort is allowed is when an employee claims he was discharged <u>in retaliation</u> for: 1) asserting rights under the Worker's Compensation Act; and 2) whistleblowing. <u>Jacobson v. Knepper & Moga, P.C.</u>, 185 Ill2d 372, 376, 706 N.E.2d 491, 493 (1998).

Plaintiff next argues that "[r]etaliatory discharge is <u>one</u> way that has been shown to be a violation of public policy."  (Pl. Resp. p. 3)  Plaintiff cites the case of <u>Carty v. Suter</u>, 371 Ill.App.3d 784, 863 N.E.2d 771 (2nd Dist. 2007), for the proposition that a cause of action exists even if there are no allegations of retaliatory discharge and that the Second District recognized "an expansion of what constitutes a violation of public policy."  (Pl. Resp. p. 4)

If the Second District had recognized a tort for wrongful discharge in violation of public policy, this would not be an expansion of an existing tort - it would have been the recognition of

a wholly new tort. However, this is not what the Second District did in <u>Carty</u>. Further, this would have been in contravention of the Illinois Supreme Court's directive that the tort of retaliatory discharge is an extremely narrow exception to the doctrine of at-will employment and the Court's rejection of any attempts to further broaden the tort. <u>Hartlein v. Illinois Power Co.</u>, 151 Ill. 2d 142, 163, 601 N.E.2d 720, 176 Ill. Dec. 22 (1992); <u>Zimmerman v. Buchheit of Sparta</u>, 164 Ill. 2d 29, 37-38, 645 N.E.2d 877, 206 Ill. Dec. 625 (1995).[1]

A simple reading of <u>Carty v. Suter Co., Inc.</u> demonstrates that <u>Carty</u> is nothing more than a retaliatory discharge claim in which the issue of retaliation was not being disputed by the parties, that is, the parties were in agreement that the discharge was retaliatory. It is well settled law that the tort of retaliatory discharge contains the following elements:

1.      The plaintiff was discharged;

2.      The discharge was in retaliation for his activities; and

3.      The discharge violates a clear mandate of public policy. <u>Graham v. Commonwealth Edison Co.</u>, 318 Ill.App.3d 736, 742, 742 N.E.2d 858, 864 (1st Dist. 2000).

Thus, in <u>Carty</u>, the parties agreed that the first two elements were met and the only disputed area was the third element. A basic reading of the case demonstrates this to be true. The case involved two counts and the relevant facts as outlined by the appellate court are:

"In count I, plaintiff alleged that…plaintiff worked, on average, 6 days per week for 11 hours per day and "rarely received a lunch break," in violation of the One Day Rest in Seven Act. On May 20, 2002, plaintiff confronted the plant manager about the issues. On May 22, 2002, defendant terminated plaintiff. Plaintiff

---

[1] The Illinois Appellate Courts have likewise rejected attempts, or been reversed in attempts to broaden the scope of the tort. *Graham v. Commonwealth Edison* 318 Ill. App. 3d 736, 742, 742 N.E.2d 858, 252 Ill. Dec. 320 (1st Dist. 2000); *Welsh v. Commonwealth Edison,* 306 Ill. App. 3d 148, 153, 713 N.E.2d 679, 239 Ill. Dec. 148 (1st Dist. 1999); *Hindo v. University of Health Sciences/Chicago Medical School,* 237 Ill. App. 3d 453, 460, 404 N.E.2d 463, 178 Ill. Dec. 207 (2d Dist. 1992); *Melton v. Central Illinois Public Service Co.*, 220 Ill. App. 3d 1052, 1056, 581 N. E. 2d 423, 163 Ill. Dec. 472 (4th Dist. 1991); *Veit v. Village of Round Lake,* 167 Ill. App. 3d 350, 351-52, 521 N. E. 2d 145 118 Ill. Dec. 77 (2d Dist. 1988); *Stutzman v. Board of Education,* 171 Ill. App. 3d 670, 675, 525 N.E.2d 903, 121 Ill. Dec. 596 (1st Dist. 1988); *Scheller v. Health Care Services*, 138 Ill. App. 3d 219, 225, 485 N.E.2d 26, 92 Ill. Dec. 471 (4th Dist. 1985).

alleged that he was discharged **in retaliation** for reporting the lunch-break violation to the plant manager and that his discharge violates public policy.

* * *

"In count II, plaintiff alleged that…he saw several buttermilk containers in the garbage with "use by" dates of May 25, 2002, and June 6, 2002.  The buttermilk had been used in salads bearing "use by" dates of June 24, 2002, and the salads had been shipped to customers….On May 20, 2002, plaintiff confronted the plant manager about the "questionable" practices.   On May 22, 2002 defendant terminated plaintiff.  Plaintiff alleged that he was discharged **in retaliation** for reporting his concerns to the plant manager and his discharge violates public policy." Id. at 785-786.  (Emphasis added, Citations omitted)

The trial court granted summary judgment to the defendant and found that the Whistleblower Act did not apply because the plaintiff did not make his complaints to any government agencies and found that neither the One Day Rest in Seven Act nor the Federal Food, Drug and Cosmetic Act of 1938 provided a private cause of action for retaliation.  The Second District clarified the issue and stated that:

"A review of plaintiff's complaint makes clear that plaintiff is not attempting to bring a claim under either statute.  **Instead, he is raising common-law retaliatory discharge claims**, citing the statutes only as the sources of the applicable public policies." Id. at 787.  (Emphasis added)

The Court noted that "the parties raise no issue as to whether plaintiff was discharged in relation for his activities.  They do however contest whether his discharge violates clear mandates of public policy.  We hold that it does." Id.  Thus, again, the parties were not contesting that the discharge was in retaliation for the plaintiff's activities of complaining about violations of the One Day Rest in Seven Act or the Federal Food, Drug and Cosmetic Act.  The issue was whether those acts provided "a basis for a retaliatory discharge cause of action." Id. at 788.

For the plaintiff to cite this case as some sort of recognition in Illinois of a tort for wrongful discharge in violation of public policy, without allegations that a discharge was in retaliation for the plaintiff's activities, is incorrect and a basic reading of the case demonstrates

that it is nothing more than a retaliatory discharge case where the parties were only disputing whether there was a clear mandate of public policy stated in the complaint.

Carty does not support plaintiff's argument rather it supports Estes' argument as it is a retaliatory discharge case. As plaintiff has provided no further support for his argument that a cause of action for wrongful discharge in violation of public policy exists in Illinois, his complaint should be dismissed with prejudice.

**B.    There is No Violation of Public Policy**

Even if the Court were somehow to construe Carty to not be a retaliatory discharge case and stand for the proposition that Illinois recognizes a cause of action when the only allegations are a discharge in violation of public policy, there is no violation of public policy in this case. Plaintiff's response brief contains a number of statements that do not appear in the complaint on which he bases his argument. However, even these statements do not offer any support.

While there is no precise definition of public policy it is generally said that "public policy concerns what is right and just and what affects the citizens of the State collectively." Palmateer, *supra* at 130. Public policy can be found in the State's constitution, statutes and judicial decision and in federal laws that are national in scope. Carty, *supra* at 787. If a plaintiff cites a statute as the basis for his discharge, the test to determine if plaintiff has a cause of action (in the retaliatory discharge context) "is whether the public policy clearly mandated by the cited provisions is violated by the plaintiff's discharge." Barr-Kelso, *supra* at 527.

As argued in the Defendant's motion and not legitimately disputed by Plaintiff, the regulations cited by Plaintiff as a basis for public policy have not been violated by the Plaintiff's discharge. Attached hereto as Exhibit A is 49 C.F.R. §40.153, which is the regulation cited by Plaintiff as the basis for public policy in Count I.

As can be seen by reading the regulation, which concerns when an MRO has to notify an employee of their right to a split specimen, it comes into play if there is a drug test that is positive for a drug or drug metabolite or as a refusal to test because of adulteration or substitution.  None of these situations are alleged to be present in this case as the only allegations in the complaint are that plaintiff tested positive for alcohol, not a drug or drug metabolite nor adulteration or substitution.  (Attached hereto as Exhibit B is 49 C.F.R. §40.3, the definition section of the regulations at issue that define "alcohol," "drugs," "adulterated specimen," and "substituted specimen.")  49 C.F.R. §40.153 simply does not apply to this case so it does not provide plaintiff any basis of public policy.

Attached hereto as Exhibit C is 49 C.F.R. §40.247, which is the regulation cited by Plaintiff as the basis for public policy in Count II.  This regulation contains procedural requirements for a breath alcohol technician (BAT) after a screen test is taken.  §40.247(a) is the only section that would apply in this case as it concerns a situation where a BAT is less than .02.  Plaintiff has alleged his result was a .012.  There are only two requirements in a situation where the BAT is less than .02.  First, the technician that administered the test must sign and date the DOT Alcohol Testing Form.  49 C.F.R. §40.247(a)(1)  Second, the technician must transmit the result to the employer in a confidential manner.  49 C.F.R. §40.247(a)(2)  These are the only requirements of this regulation that apply in this situation and they are requirements of the technician administering the test, not the employer.  There are no allegations in the complaint that the technician did not take these two steps but more importantly there is clearly no public policy mandated by this regulation that is violated by the plaintiff's discharge.  In fact, the regulation does not address or concern a termination of an employee.

Thus, while it is clear that neither of the regulations cited by plaintiff support any argument that they contain public policy that was violated with his discharge, plaintiff's argument also misses the mark because plaintiff was terminated as a result of Estes' internal policy, not for a violation of any DOT regulation.  As outlined in paragraph 9 of Plaintiff's complaint, Estes had a policy that mandated that any employee that tested positive for drugs or alcohol would be immediately terminated.  Accordingly, even though the DOT regulations cited by Plaintiff do not establish any public policy or relate to an employee's termination, the Plaintiff was not discharged as a result of these regulations but rather based upon Estes' own internal policies.

The two cases cited by Plaintiff involve state actions in suspending an individual's driver's license.  The defendant in this case is not the state nor is there any issue of a suspension of a driver's license.  The cases have no applicability.  As argued above, Plaintiff has failed to identify a valid cause of action that is recognized by Illinois law.  However, even if the Court were to find that Illinois does recognize a cause of action for wrongful discharge in violation of public policy, Plaintiff has not identified a violation of clearly mandated public policy as the regulations cited do not apply and do not provide any public policy on this issue.

**C.**     **The Federal Regulations Cited Do Not Provide a Private Cause of Action**

As the Carty case implicitly recognizes, many statutes contain anti-retaliation provisions that provide a private cause of action.  For example, Title VII of the Civil Rights Act provides for a statutory cause of action for retaliation as does the Illinois Human Rights Act.  Further, as Carty also recognized, many litigants often try to bring private causes of action for retaliation under statutes that do not provide for such an action.  As the trial court in Carty recognized the One Day Rest in Seven Act and the Federal Food, Drug and Cosmetic Act are two such acts that

7

do not provide a private cause of action for retaliation.  Thus, the only available cause of action

for that plaintiff would have been for common law retaliatory discharge.

A statute can provide a private cause of action explicitly or implicitly.  There is no

argument, nor could there be, that the regulations cited have an explicit provision allowing a

private cause of action by plaintiff or a similar class of persons.  The Supreme Court has

articulated a four-part test to determine if there is an implied cause of action in a federal statute.

That test is:

(1) whether the plaintiff is among the class of persons intended to benefit from the enactment of
the statute;
(2) whether there is any evidence of legislative intent to provide or deny a private remedy;
(3) whether a private remedy would be consistent with the underlying purposes of the legislative
scheme; and
(4) whether the action is one traditionally delegated to state law so it would be inappropriate to
imply a federal remedy.  Cort v. Ash, 422 U.S. 66, 78, 45 L.Ed.2d 26, 95 S.Ct. 2080 (1975).

As identified in Defendant's motion, this issue has already been addressed relating to

these regulations and the statute authorizing the regulations, the Federal Omnibus Transportation

Employee Testing Act of 1991 (FOTETA).  The Courts have determined that there is no private

cause of action for a commercial drivers against an employer related to drug and alcohol testing.

McDowell v. J.B. Hunt Transport, Inc., 2004 U.S.Dist.LEXIS 18363 (N.D.Ill. 2004)[2]; Parry v.

Mohawk Motors of Michigan, Inc., 236 F.3d 299, 308 (6th Cir. 2000); Abate v. S. Pac. Trasp.

Co., 928 F.2d 167, 169-70 (5th Cir. 1991); Byrne v. Mass. Bay Transp. Auth., 196 F.Supp.2d 77,

86-87 (D.Mass 2002); Salomon v. Rocher Compuchem Lab., 909 F.Supp.126, 128 (E.D.N.Y.

1995).

Plaintiff has not cited any case that contradicts these holdings or otherwise suggests that

he has a private cause of action under the statute or regulations.  This case must be dismissed

with prejudice.

---

[2] This case is attached as Exhibit A to Defendant's Motion.

WHEREFORE, Defendant, Estes Express Lines, prays that this matter be dismissed, with prejudice, for its costs, and for any other relief that the Court deems appropriate.

/s/Jill A. Cheskes
/s/ Ruth E. Robinson
Jill A. Cheskes (ARDC # 06237878)
Ruth E. Robinson (ARDC # 6207546)
SmithAmundsen, LLC
150 N. Michigan Avenue, Suite 3300
Chicago, IL  60601
T (312) 894-3200
F (312) 894-3210

# Exhibit "A"

Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
Service: **Get by LEXSTAT®**
TOC: Code of Federal Regulations > /.../ > SUBPART G-- MEDICAL REVIEW OFFICERS AND THE VERIFICATION PROCESS >
**§ 40.153 How does the MRO notify employees of their right to a test of the split specimen?**
Citation: **49 CFR 40.153  (No Firm Documents Found)**

*49 CFR 40.153*

Retrieve Regulatory Impact® **($)**

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright © 2008, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

*** THIS SECTION IS CURRENT THROUGH THE MAY 29, 2008 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 49 -- TRANSPORTATION
SUBTITLE A -- OFFICE OF THE SECRETARY OF TRANSPORTATION
PART 40 -- PROCEDURES FOR TRANSPORTATION WORKPLACE DRUG AND ALCOHOL TESTING PROGRAMS

SUBPART G -- MEDICAL REVIEW OFFICERS AND THE VERIFICATION PROCESS

**Go to the CFR Archive Directory**

49 CFR 40.153

§ 40.153 How does the MRO notify employees of their right to a test of the split specimen?

(a) As the MRO, when you have verified a drug test as positive for a drug or drug metabolite, or as a refusal to test because of adulteration or substitution, you must notify the employee of his or her right to have the split specimen tested. You must also notify the employee of the procedures for requesting a test of the split specimen.

(b) You must inform the employee that he or she has 72 hours from the time you provide this notification to him or her to request a test of the split specimen.

(c) You must tell the employee how to contact you to make this request. You must provide telephone numbers or other information that will allow the employee to make this request. As the MRO, you must have the ability to receive the employee's calls at all times during the 72 hour period (e.g., by use of an answering machine with a "time stamp" feature when there is no one in your office to answer the phone).

(d) You must tell the employee that if he or she makes this request within 72 hours, the employer must ensure that the test takes place, and that the employee is not required to pay for the test from his or her own funds before the test takes place. You must also tell the employee that the employer may seek reimbursement for the cost of the test (see § 40.173).

(e) You must tell the employee that additional tests of the specimen e.g., DNA tests) are not authorized.

**HISTORY:**
[65 FR 79462, 79548, Dec. 19, 2000; 66 FR 28400, May 23, 2001]

**AUTHORITY:**
AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
49 U.S.C. 102,*Shepardize* 301, 322, 5331, 20140, 31306, and 45101 et seq.; 49 U.S.C. 322.*Shepardize*

**NOTES:**
[EFFECTIVE DATE NOTE: 65 FR 79462, 79548, Dec. 19, 2000, added this section as part of the revision of Part 40, effective Aug. 1, 2001; 66 FR 28400, May 23, 2001, provides that the final rule published at 65

NOTES APPLICABLE TO ENTIRE SUBTITLE:
EDITORIAL NOTE: Other regulations issued by the Department of Transportation appear in 14 CFR chapters I and II, 23 CFR, 33 CFR chapters I and IV, 44 CFR chapter chapter IV, 46 CFR chapters I through III, 48 CFR chapter 12, and 49 CFR chapters I through VI.
[PUBLISHER'S NOTE: For Federal Register citation concerning Subtitle A Notice of termination of advisory committee, see 70 FR 30378, May 26, 2005.]

NOTES APPLICABLE TO ENTIRE PART:
[PUBLISHER'S NOTE: Nomenclature changes affecting Part 40 appear at 71 FR 49382, 49384, Aug. 22, 2006.]
[PUBLISHER'S NOTE: For Federal Register citations concerning Part 40 Notice concerning review, see: 66 FR 9673, Feb. 9, 2001.]

NOTES TO DECISIONS: COURT AND ADMINISTRATIVE DECISIONS SIGNIFICANTLY DISCUSSING SECTION --
Williams v UPS, Inc. (2006, WD Okla) 2006 US Dist LEXIS 60070, summary judgment gr, judgment entered (2007, WD Okla) 2007 US Dist LEXIS 3467

234 words

Service: **Get by LEXSTAT®**
TOC: Code of Federal Regulations  > / . . . / > SUBPART G-- MEDICAL REVIEW OFFICERS AND THE VERIFICATION PROCESS > **§ 40.153 How does the MRO notify employees of their right to a test of the split specimen?**
Citation: **49 CFR 40.153  (No Firm Documents Found)**
View: Full
Date/Time: Thursday, June 5, 2008 - 10:49 AM EDT

 **LexisNexis®**  About LexisNexis  | Terms & Conditions  | Contact Us
Copyright ©  2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Exhibit "B"

Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector

Source: Legal > / . . . / > CFR - Code of Federal Regulations [i]
TOC: Code of Federal Regulations > / . . . / > SUBPART A-- ADMINISTRATIVE PROVISIONS > § 40.3 What do the terms used in this regulation mean?

*49 CFR 40.3*

Retrieve Regulatory Impact® **($)**

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2008, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

\*\*\* THIS SECTION IS CURRENT THROUGH THE MAY 29, 2008 ISSUE OF \*\*\*
\*\*\* THE FEDERAL REGISTER \*\*\*

TITLE 49 -- TRANSPORTATION
SUBTITLE A -- OFFICE OF THE SECRETARY OF TRANSPORTATION
PART 40 -- PROCEDURES FOR TRANSPORTATION WORKPLACE DRUG AND ALCOHOL TESTING PROGRAMS

SUBPART A -- ADMINISTRATIVE PROVISIONS

**Go to the CFR Archive Directory**

49 CFR 40.3

§ 40.3 What do the terms used in this regulation mean?

In this part, the terms listed in this section have the following meanings:

Adulterated specimen. A specimen that contains a substance that is not expected to be present in human urine, or contains a substance expected to be present but is at a concentration so high that it is not consistent with human urine.

Affiliate. Persons are affiliates of one another if, directly or indirectly, one controls or has the power to control the other, or a third party controls or has the power to control both. Indicators of control include, but are not limited to: interlocking management or ownership; shared interest among family members; shared facilities or equipment; or common use of employees. Following the issuance of a public interest exclusion, an organization having the same or similar management, ownership, or principal employees as the service agent concerning whom a public interest exclusion is in effect is regarded as an affiliate. This definition is used in connection with the public interest exclusion procedures of Subpart R of this part.

Air blank. In evidential breath testing devices (EBTs) using gas chromatography technology, a reading of the device's internal standard. In all other EBTs, a reading of ambient air containing no alcohol.

Alcohol. The intoxicating agent in beverage alcohol, ethyl alcohol or other low molecular weight alcohols, including methyl or isopropyl alcohol.

Alcohol concentration. The alcohol in a volume of breath expressed in terms of grams of alcohol per 210 liters of breath as indicated by a breath test under this part.

Alcohol confirmation test. A subsequent test using an EBT, following a screening test with a result of 0.02 or greater, that provides quantitative data about the alcohol concentration.

Alcohol screening device (ASD). A breath or saliva device, other than an EBT, that is approved by the National Highway Traffic Safety Administration (NHTSA) and placed on a conforming products list (CPL) for such devices.

concentration of alcohol in a breath or saliva specimen.

Alcohol testing site. A place selected by the employer where employees present themselves for the purpose of providing breath or saliva for an alcohol test.

Alcohol use. The drinking or swallowing of any beverage, liquid mixture or preparation (including any medication), containing alcohol.

Blind specimen or blind performance test specimen. A specimen submitted to a laboratory for quality control testing purposes, with a fictitious identifier, so that the laboratory cannot distinguish it from an employee specimen.

Breath Alcohol Technician (BAT). A person who instructs and assists employees in the alcohol testing process and operates an evidential breath testing device.

Cancelled test. A drug or alcohol test that has a problem identified that cannot be or has not been corrected, or which this part otherwise requires to be cancelled. A cancelled test is neither a positive nor a negative test.

Chain of custody. The procedure used to document the handling of the urine specimen from the time the employee gives the specimen to the collector until the specimen is destroyed. This procedure uses the Federal Drug Testing Custody and Control Form (CCF).

Collection container. A container into which the employee urinates to provide the specimen for a drug test.

Collection site. A place selected by the employer where employees present themselves for the purpose of providing a urine specimen for a drug test.

Collector. A person who instructs and assists employees at a collection site, who receives and makes an initial inspection of the specimen provided by those employees, and who initiates and completes the CCF.

Confirmation (or confirmatory) drug test. A second analytical procedure performed on a urine specimen to identify and quantify the presence of a specific drug or drug metabolite.

Confirmation (or confirmatory) validity test. A second test performed on a urine specimen to further support a validity test result.

Confirmed drug test. A confirmation test result received by an MRO from a laboratory.

Consortium/Third-party administrator (C/TPA). A service agent that provides or coordinates the provision of a variety of drug and alcohol testing services to employers. C/TPAs typically perform administrative tasks concerning the operation of the employers' drug and alcohol testing programs. This term includes, but is not limited to, groups of employers who join together to administer, as a single entity, the DOT drug and alcohol testing programs of its members. C/TPAs are not "employers" for purposes of this part.

Continuing education. Training for medical review officers (MROs) and substance abuse professionals (SAPs) who have completed qualification training and are performing MRO or SAP functions, designed to keep MROs and SAPs current on changes and developments in the DOT drug and alcohol testing program.

Designated employer representative (DER). An employee authorized by the employer to take immediate action(s) to remove employees from safety-sensitive duties, or cause employees to be removed from these covered duties, and to make required decisions in the testing and evaluation processes. The DER also receives test results and other communications for the employer, consistent with the requirements of this part. Service agents cannot act as DERs.

Dilute specimen. A specimen with creatinine and specific gravity values that are lower than expected for human urine.

DOT, The Department, DOT agency. These terms encompass all DOT agencies, including, but not limited

Administration (FRA), the Federal Motor Carrier Safety Administration (FMCSA), the Federal Transit Administration (FTA), the National Highway Traffic Safety Administration (NHTSA), the Pipeline and Hazardous Materials Safety Administration (PHMSA), and the Office of the Secretary (OST). These terms include any designee of a DOT agency.

Drugs. The drugs for which tests are required under this part and DOT agency regulations are marijuana, cocaine, amphetamines, phencyclidine (PCP), and opiates.

Employee. Any person who is designated in a DOT agency regulation as subject to drug testing and/or alcohol testing. The term includes individuals currently performing safety-sensitive functions designated in DOT agency regulations and applicants for employment subject to pre-employment testing. For purposes of drug testing under this part, the term employee has the same meaning as the term "donor" as found on CCF and related guidance materials produced by the Department of Health and Human Services.

Employer. A person or entity employing one or more employees (including an individual who is self-employed) subject to DOT agency regulations requiring compliance with this part. The term includes an employer's officers, representatives, and management personnel. Service agents are not employers for the purposes of this part.

Error Correction Training. Training provided to BATs, collectors, and screening test technicians (STTs) following an error that resulted in the cancellation of a drug or alcohol test. Error correction training must be provided in person or by a means that provides real-time observation and interaction between the instructor and trainee.

Evidential Breath Testing Device (EBT). A device approved by NHTSA for the evidential testing of breath at the.02 and.04 alcohol concentrations, placed on NHTSA's Conforming Products List (CPL) for "Evidential Breath Measurement Devices" and identified on the CPL as conforming with the model specifications available from NHTSA's Traffic Safety Program.

HHS. The Department of Health and Human Services or any designee of the Secretary, Department of Health and Human Services.

Initial drug test. The test used to differentiate a negative specimen from one that requires further testing for drugs or drug metabolites.

Initial validity test. The first test used to determine if a specimen is adulterated, diluted, or substituted.

Invalid drug test. The result of a drug test for a urine specimen that contains an unidentified adulterant or an unidentified interfering substance, has abnormal physical characteristics, or has an endogenous substance at an abnormal concentration that prevents the laboratory from completing or obtaining a valid drug test result.

Laboratory. Any U.S. laboratory certified by HHS under the National Laboratory Certification Program as meeting the minimum standards of Subpart C of the HHS Mandatory Guidelines for Federal Workplace Drug Testing Programs; or, in the case of foreign laboratories, a laboratory approved for participation by DOT under this part. (The HHS Mandatory Guidelines for Federal Workplace Drug Testing Programs are available on the internet at http://www.health.org/workpl.htm or from the Division of Workplace Programs, 1 Choke Cherry Road, Room 2-1035, Rockville MD 20587.)

Medical Review Officer (MRO). A person who is a licensed physician and who is responsible for receiving and reviewing laboratory results generated by an employer's drug testing program and evaluating medical explanations for certain drug test results.

Office of Drug and Alcohol Policy and Compliance (ODAPC). The office in the Office of the Secretary, DOT, that is responsible for coordinating drug and alcohol testing program matters within the Department and providing information concerning the implementation of this part.

Primary specimen. In drug testing, the urine specimen bottle that is opened and tested by a first laboratory to determine whether the employee has a drug or drug metabolite in his or her system; and for the purpose of validity testing. The primary specimen is distinguished from the split specimen, defined in

Qualification Training. The training required in order for a collector, BAT, MRO, SAP, or STT to be qualified to perform their functions in the DOT drug and alcohol testing program. Qualification training may be provided by any appropriate means (e.g., classroom instruction, internet application, CD-ROM, video).

Refresher Training. The training required periodically for qualified collectors, BATs, and STTs to review basic requirements and provide instruction concerning changes in technology (e.g., new testing methods that may be authorized) and amendments, interpretations, guidance, and issues concerning this part and DOT agency drug and alcohol testing regulations. Refresher training can be provided by any appropriate means (e.g., classroom instruction, internet application, CD-ROM, video).

Screening Test Technician (STT). A person who instructs and assists employees in the alcohol testing process and operates an ASD.

Secretary. The Secretary of Transportation or the Secretary's designee.

Service agent. Any person or entity, other than an employee of the employer, who provides services specified under this part to employers and/or employees in connection with DOT drug and alcohol testing requirements. This includes, but is not limited to, collectors, BATs and STTs, laboratories, MROs, substance abuse professionals, and C/TPAs. To act as service agents, persons and organizations must meet the qualifications set forth in applicable sections of this part. Service agents are not employers for purposes of this part.

Shipping container. A container that is used for transporting and protecting urine specimen bottles and associated documents from the collection site to the laboratory.

Specimen bottle. The bottle that, after being sealed and labeled according to the procedures in this part, is used to hold the urine specimen during transportation to the laboratory.

Split specimen. In drug testing, a part of the urine specimen that is sent to a first laboratory and retained unopened, and which is transported to a second laboratory in the event that the employee requests that it be tested following a verified positive test of the primary specimen or a verified adulterated or substituted test result.

Stand-down. The practice of temporarily removing an employee from the performance of safety-sensitive functions based only on a report from a laboratory to the MRO of a confirmed positive test for a drug or drug metabolite, an adulterated test, or a substituted test, before the MRO has completed verification of the test result.

Substance Abuse Professional (SAP). A person who evaluates employees who have violated a DOT drug and alcohol regulation and makes recommendations concerning education, treatment, follow-up testing, and aftercare.

Substituted specimen. A specimen with creatinine and specific gravity values that are so diminished that they are not consistent with human urine.

Verified test. A drug test result or validity testing result from an HHS-certified laboratory that has undergone review and final determination by the MRO.

## HISTORY:
[54 FR 49866, Dec. 1, 1989; 59 FR 7354, Feb. 15, 1994; 59 FR 43000, Aug. 19, 1994; 61 FR 37222, 37223, July 17, 1996; 65 FR 79462, 79528, Dec. 19, 2000; 66 FR 41944, 41950, Aug. 9, 2001; 71 FR 49382, 49384, Aug. 23, 2006, as corrected at 71 FR 55347, Sept. 22, 2006]

## AUTHORITY:
AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
49 U.S.C. 102,*Shepardize* 301, 322, 5331, 20140, 31306, and 45101 et seq.; 49 U.S.C. 322.*Shepardize*

## NOTES:
[EFFECTIVE DATE NOTE: 71 FR 49382, 49384, Aug. 23, 2006, amended this section, effective Sept. 22,

NOTES APPLICABLE TO ENTIRE SUBTITLE:
EDITORIAL NOTE: Other regulations issued by the Department of Transportation appear in 14 CFR chapters I and II, 23 CFR, 33 CFR chapters I and IV, 44 CFR chapter chapter IV, 46 CFR chapters I through III, 48 CFR chapter 12, and 49 CFR chapters I through VI.
[PUBLISHER'S NOTE: For Federal Register citation concerning Subtitle A Notice of termination of advisory committee, see 70 FR 30378, May 26, 2005.]


NOTES APPLICABLE TO ENTIRE PART:
[PUBLISHER'S NOTE: Nomenclature changes affecting Part 40 appear at 71 FR 49382, 49384, Aug. 22, 2006.]
[PUBLISHER'S NOTE: For Federal Register citations concerning Part 40 Notice concerning review, see: 66 FR 9673, Feb. 9, 2001.]

2192 words

Source:  Legal > / . . . / > **CFR - Code of Federal Regulations** 
TOC:  Code of Federal Regulations > / . . . / > SUBPART A-- ADMINISTRATIVE PROVISIONS > **§ 40.3 What do the terms used in this regulation mean?**
View:  Full
Date/Time:  Thursday, June 5, 2008 - 10:50 AM EDT

**LexisNexis®**   About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# Exhibit "C"

Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector

Service: **Get by LEXSTAT®**
TOC: Code of Federal Regulations  > / . . . /  > SUBPART L-- ALCOHOL SCREENING TESTS  > § 40.247 What procedures does the BAT or STT follow after a screening test result?
Citation: **49 cfr 40.247  (No Firm Documents Found)**

*49 CFR 40.247*

Retrieve Regulatory Impact® **($)**

LEXISNEXIS' CODE OF FEDERAL REGULATIONS
Copyright (c) 2008, by Matthew Bender & Company, a member
of the LexisNexis Group. All rights reserved.

\*\*\* THIS SECTION IS CURRENT THROUGH THE MAY 29, 2008 ISSUE OF \*\*\*
\*\*\* THE FEDERAL REGISTER \*\*\*

TITLE 49 -- TRANSPORTATION
SUBTITLE A -- OFFICE OF THE SECRETARY OF TRANSPORTATION
PART 40 -- PROCEDURES FOR TRANSPORTATION WORKPLACE DRUG AND ALCOHOL TESTING PROGRAMS

SUBPART L -- ALCOHOL SCREENING TESTS

### Go to the CFR Archive Directory

49 CFR 40.247

§ 40.247 What procedures does the BAT or STT follow after a screening test result?

(a) If the test result is an alcohol concentration of less than 0.02, as the BAT or STT, you must do the following:

(1) Sign and date Step 3 of the ATF; and

(2) Transmit the result to the DER in a confidential manner, as provided in § 40.255.

(b) If the test result is an alcohol concentration of 0.02 or higher, as the BAT or STT, you must direct the employee to take a confirmation test.

(1) If you are the BAT who will conduct the confirmation test, you must then conduct the test using the procedures beginning at § 40.251.

(2) If you are not the BAT who will conduct the confirmation test, direct the employee to take a confirmation test, sign and date Step 3 of the ATF, and give the employee Copy 2 of the ATF.

(3) If the confirmation test will be performed at a different site from the screening test, you must take the following additional steps:

(i) Advise the employee not to eat, drink, put anything (e.g., cigarette, chewing gum) into his or her mouth, or belch;

(ii) Tell the employee the reason for the waiting period required by § 40.251(a) (i.e., to prevent an accumulation of mouth alcohol from leading to an artificially high reading);

(iii) Explain that following your instructions concerning the waiting period is to the employee's benefit;

(iv) Explain that the confirmation test will be conducted at the end of the waiting period, even if the instructions have not been followed;

(v) Note on the "Remarks" line of the ATF that the waiting period instructions were provided;

(vi) Instruct the person accompanying the employee to carry a copy of the ATF to the BAT who will perform the confirmation test; and

(vii) Ensure that you or another BAT, STT, or employer representative observe the employee as he or she is transported to the confirmation testing site. You must direct the employee not to attempt to drive a motor vehicle to the confirmation testing site.

(c) If the screening test is invalid, you must, as the BAT or STT, tell the employee the test is cancelled and note the problem on the "Remarks" line of the ATF. If practicable, repeat the testing process (see § 40. 271).

**HISTORY:**
[65 FR 79462, 79558, Dec. 19, 2000; 66 FR 28400, May 23, 2001]

**AUTHORITY:**
AUTHORITY NOTE APPLICABLE TO ENTIRE PART:
49 U.S.C. 102,*Shepardize* 301, 322, 5331, 20140, 31306, and 45101 et seq.; 49 U.S.C. 322.*Shepardize*

**NOTES:**
[EFFECTIVE DATE NOTE: 65 FR 79462, 79558, Dec. 19, 2000, added this section as part of the revision of Part 40, effective Aug. 1, 2001; 66 FR 28400, May 23, 2001, provides that the final rule published at 65 FR 79462, Dec. 19, 2000, permits as of May 23, 2001, early compliance with the electronic reporting provisions.]

NOTES APPLICABLE TO ENTIRE SUBTITLE:
EDITORIAL NOTE: Other regulations issued by the Department of Transportation appear in 14 CFR chapters I and II, 23 CFR, 33 CFR chapters I and IV, 44 CFR chapter chapter IV, 46 CFR chapters I through III, 48 CFR chapter 12, and 49 CFR chapters I through VI.
[PUBLISHER'S NOTE: For Federal Register citation concerning Subtitle A Notice of termination of advisory committee, see 70 FR 30378, May 26, 2005.]

NOTES APPLICABLE TO ENTIRE PART:
[PUBLISHER'S NOTE: Nomenclature changes affecting Part 40 appear at 71 FR 49382, 49384, Aug. 22, 2006.]
[PUBLISHER'S NOTE: For Federal Register citations concerning Part 40 Notice concerning review, see: 66 FR 9673, Feb. 9, 2001.]

361 words

 LexisNexis®  About LexisNexis  | Terms & Conditions  | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.